IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WEST BEND MUTUAL INSURANCE, )
COMPANY, )
                               )
       Plaintiff, )        NO. 3:24-CV-00766
                               )
v. )        JUDGE RICHARDSON
                               )
WOOD TREE SERVICE, LLC, ET AL. )
                               )
       Defendants. )
                               )

## **MEMORANDUM OPINION AND ORDER**

In this declaratory judgment action, Plaintiff seeks a declaration that it is not required, under a liability insurance policy it issued, to defend or indemnify Defendants with respect to claims in a lawsuit asserted by an injured worker. Pending before the Court is a Motion for Judgment on the Pleadings (Doc. No. 22, "Motion") filed by Plaintiff, West Bend Mutual Insurance Company ("West Bend"). The Motion is accompanied by a supporting memorandum of law (Doc. No. 22-1, "Memorandum"). Via the Motion, West Bend seeks judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on the grounds that as a matter of law, coverage with respect to the injured worker was excluded under an Employer's Liability exclusion clause in the policy at issue. (Doc. No. 22).[1]

Defendants, Wood Tree Service ("Wood Tree Service") and Robyn Wood, filed a response in opposition to the Motion. (Doc. No. 25, "Response"). West Bend filed a reply, in which it

---

[1] Although the Motion is a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the underlying relief sought by Plaintiff (the movant) is a declaratory judgment. Accordingly, were the Court to address the Motion on the merits, it would need to assess whether, drawing all reasonable inferences in favor of Defendants (the non-movants), the pleadings establish that declaratory relief is appropriate. *See Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012) (explaining that Rule 12(c) motions are evaluated under the same standard as Rule 12(b)(6)).

maintains that its complaint (Doc. No. 1, "West Bend's Complaint") alleges undisputed facts that entitle West Bend to judgment as a matter of law. (Doc. No. 26, "Reply").

For the reasons discussed herein, the Court declines to rule on the Motion because it declines to exercise jurisdiction in this case.

<u>RELEVANT BACKGROUND</u>

This action (which is a kind of action sometimes referred to herein as a "declaratory action") was filed by West Bend, an insurance company that provides commercial general liability insurance coverage to Wood Tree Service. West Bend seeks a declaration that it is not obligated to provide defense[2] or indemnity to Wood Tree Service in an underlying state-court suit ("State-Court Action") filed in May 2024 by Aaron Minon (the aforementioned injured worker) in Wilson County Circuit Court, styled *Aaron David Minon v. Wood Tree Service, LLC d/b/a Robyn Wood Tree Service and Robyn Wood*, Case No. 24-CV-00296. In the State-Court Action, Minon asserts negligence claims against Wood Tree Service and its owner, Robyn Wood. (Doc. No. 1-1, "State-Court Complaint" at ¶¶ 5, 21). The relevant alleged facts from the State-Court Complaint, all of which remain to be proven (if they can be) in the State-Court Action as far as the instant record reveals, are set forth in the following three paragraphs.

On July 3, 2023, Minon was "employed by"[3] Wood Tree Service as a steeplejack and tree removal specialist to perform emergency services on a tree that had broken over two residences located in the Green Hills area of Nashville, Tennessee. (Doc. No. 1-1 at ¶¶ 5, 6). To accomplish

---

[2] West Bend is currently providing a defense, albeit strictly under a reservation of rights because it still seeks to establish (via the instant action) that it owes Defendants no duty to defend at all. (Doc. No. 1 at ¶18).

[3] The Court is aware that this particular allegation may actually fall more within the realm of legal conclusion that factual allegation.

the desired removal, the broken section of the tree was stabilized using two rope lines (commonly known as bull lines) that were attached to the tip and base of the tree, respectively. (*Id*. at ¶ 10). In order to help control the descent of the broken tree fragment, the line secured to the tip of the tree was attached by one of Wood Tree Service's employees, Casey Moon, to a friction-lowering device mounted on a nearby tree. (*Id*. at ¶¶ 12, 13). That line was then held by Robyn Wood, the owner of Wood Tree Service, to manage the line in such a way that the tree could be lowered safely to the ground. (*Id*. at ¶ 13).

While Minon was on the roof securing the tree, Robyn Wood "let loose" the line attached to the tip of the tree. (*Id*. at ¶ 15). Minon plummeted to the ground, with the tree crushing his lower body. (*Id*.). He sustained severe injuries that were both permanent and disabling, and he was hospitalized for over a month. (*Id.* at ¶¶ 16-17). His injuries included a shattered hip, a broken femur, bladder trauma, urethra trauma, and kidney trauma. (*Id.* at ¶ 16).

Minon alleges that his injuries are the result of negligent actions of both Casey Moon and Robyn Wood, who (according to Minon) failed to properly secure and control the line that was attached to the tip of the tree. (Doc. No. 1-1 at ¶ 18). In an attempt to receive compensation for his injuries, Minon filed a petition on September 1, 2023, for Benefit Determination with the Tennessee Workers' Compensation Bureau. (*Id.* at ¶ 19). Wood Tree Service claimed—at some point and in some fashion—during the Workers' Compensation matter that Minon was not an employee but rather an independent contractor. (*Id.* at ¶ 20). Accordingly, Wood Tree Service argued that Minon was not entitled to benefits under the Tennessee Workers' Compensation Act. (*Id.*).

Minon then initiated the State-Court Action, alleging that Wood Tree Service and Robyn Wood are liable for his injuries under a theory of *res ipsa loquitor* due to the negligence of its

employees in handling and securing the tree. (*Id.* at ¶ 29). Wood Tree Service notified its insurer, West Bend, of Minon's lawsuit, seeking coverage (i.e., a defense and indemnification) under its liability insurance policy ("Policy"). (Doc. No. 1 at ¶ 18).

On June 24, 2024, West Bend filed West Bend's Complaint to initiate the instant insurance-coverage litigation. In its prayer for relief, West Bend's Complaint requests a declaratory judgment that West Bend has no duty to defend or indemnify Wood Tree Service, or owner Robyn Wood, in the State-Court Action.[4] (Doc. No. 1 at 5-6). In so requesting, the Complaint relies upon the "Employer's Liability" exclusion clause within the Policy, which excludes coverage for "bodily injury" for an "employee" of the insured arising out of and in the course of "employment by the insured" or "performing duties related to the conduct of the insured's business." (Doc. No. 1 at ¶¶ 21, 22; Doc. No. 1-2 at 22).[5]

The instant Motion likewise relies on this exclusion.

<u>LEGAL STANDARD</u>

The Declaratory Judgment Act states that, in a case of actual controversy within its jurisdiction, the court may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201(a). The Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d, 734, 758 (M.D. Tenn. 2019) (quoting *Wilton v. Seven Falls Co.* [*Wilton*], 515 U.S. 277, 286 (1995); *Mass. Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759

---

[4] Minon is not a party. He did file a motion to intervene in this case (Doc. No. 27), which the Court ultimately need not address.

[5] Where the Court herein cites a page number (as opposed to a paragraph number), and there is a difference between the page number on the document itself and the page number assigned by the PACER system, the Court endeavors to use the page number assigned by PACER. Notably, in citing either the State-Court Complaint or West Bend's Complaint, the Court cites paragraph numbers rather than page numbers.

F. App'x 431, 435 (6th Cir. 2018)). "Congress 'created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.'" *Vanderbilt*, 382 F. Supp. 3d at 758 (quoting *Wilton*, 515 U.S. at 288). Accordingly, under the Declaratory Judgment Act, "the court has discretion *not* to hear a declaratory judgment action, even where jurisdiction exists." *Encore Furniture Thrifts and More, LLC v. Doubletap, Inc.*, 281 F. Supp. 3d 665, 668 (M.D. Tenn. 2017). Put another way, and as it relates to the instant case, diversity jurisdiction exists in this case, and therefore, the Court *could* hear this declaratory judgment action, but it must determine whether it *should* do so; the Court is "under no compulsion to exercise that jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). As the Supreme Court in *Wilton* explained, this discretion allows courts to weigh "considerations of practicality and wise judicial administration" before proceeding with a declaratory judgment action. *Wilton*, 515 U.S. at 288. As one district court in this circuit has cogently explained in a case brought by an insurance company seeking a declaration that it did not owe the defendants coverage with respect to damage caused by fire at the insureds' home:

> [N]otwithstanding subject matter jurisdiction based on diversity of citizenship, federal courts have discretion pertaining to whether to exercise jurisdiction in declaratory judgment actions. The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.' " *Wilton*, 515 U.S. at 287, 115 S. Ct. 2137 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241, 73 S. Ct. 236, 97 L.Ed. 291 (1952)). As a result, and particularly in cases involving insurance disputes such as this one, some federal courts have declined to exercise federal jurisdiction in cases brought under the Declaratory Judgment Act. *See, e.g.*, *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S. Ct. 1173, 86 L.Ed. 1620 (1942); *Motorists Mut. Ins. Co. v. Thacker Memorial Inc.*, 679 F.Supp.2d 802 (E.D. Ky. 2010).
>
> Here, the Hattons' normative argument, that regardless of the Court's subject matter jurisdiction this matter should be heard in state court as opposed to federal court, requires the Court to engage in a complex analysis concerning basic principles of federal jurisdiction and federalism generally. This is especially true where subject matter jurisdiction is based on diversity of citizenship and the substantive rule of decision is based on application of state law.

The United States Court of Appeals for the Sixth Circuit has provided guidance to district courts deciding whether to exercise discretionary jurisdiction under the Declaratory Judgment Act, stating that "[i]n determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action." *Adrian Energy Assocs. v. Mich. Public Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007). Furthermore, in insurance cases, like this one, the Court of Appeals has said that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986); *see also Travelers Indem. Co. v. Bowling Green Prof. Assocs., PLC*, 495 F.3d 266, 273 (6th Cir. 2007).

*Nationwide Mut. Fire Ins. Co. v. Hatton* ["*Hatton*"], 357 F. Supp. 3d 598, 609–10 (E.D. Ky. 2019).

The last sentence is to an extent inapplicable in the instant case because unlike in some cases (including *Hatton*), in the instant case the defendant-insured asserted not only a duty to indemnify (an assertion of dubious ripeness because it is not yet clear that there will be any liability for the plaintiff-insurer to indemnify), but also a duty to defend (an assertion that is already ripe because there has been and remains a lawsuit, the State-Court Action, to defend). With respect to a duty to defend (as opposed to the duty to indemnify), West Bend cannot be accused of seeking an "advance opinion" the way insurance companies can be so accused when they seek a declaration as to a (lack of) duty to indemnify. But the rest of the above-quoted discussion is applicable here, as is the following discussion from *Hatton*:

Accordingly, the Court must engage in a detailed, fact-specific inquiry to determine whether to exercise jurisdiction over this declaratory judgment action. *See Sec. Nat'l Ins. Co. v. Jamestown Union Bancshares, Inc.* 352 F. Supp. 3d 845, 852 (M.D. Tenn. 2018). To guide this analysis, the Court must consider: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is merely being used for "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory judgment action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Bituminous Cas. Corp. v. J &*

> *L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004); *Grand Trunk W. R.R. Co.*
> *v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

*Id.* It is true that "there is no *per se* rule to prevent district courts from exercising jurisdiction over declaratory judgment actions related to insurance relationships and relevant exceptions to coverage." *Sec. Nat'l Ins. Co.*, 352 F. Supp. 3d at 852 (citing *Roumph*, 211 F.3d at 967).[6] Nevertheless, "[d]eclining jurisdiction is always a sensible option to consider in declaratory judgment actions seeking an opinion on insurance coverage impacting litigation pending in another court . . . ." *Westfield Ins. Corp. v. Mainstream Cap. Corp.*, 366 F. Supp. 2d 519, 521 (E.D. Mich. 2005). And in the context of such actions, the Sixth Circuit has "question[ed] the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 816–17 (6th Cir. 2004) (quoting *Am. Home Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir.1986)). Under such circumstances, the Sixth Circuit has indicated, at least the fifth factor counsels against exercising jurisdiction. *See Bituminous*, 373 F.3d at 817.

It is important to keep in mind that issues involving an insurance policy's coverage are state-law questions that require "the interpretation of the insurance policy in light of claims asserted against the insured." *Allstate Ins. Co. v. Jordan*, 16 S.W.3d 777, 779 (Tenn. Ct. App. 1999) (citing *Standard Fire Ins. Co. v. Chester O'Donley & Assoc.*, 972 S.W.2d 1 (Tenn.Ct.App.1998)). And "[s]tate courts have an interest in interpreting their own law." *Green v. Hudson Ins. Co.*, No. 5:20-CV-52, 2021 WL 279609 at *2 (W.D. Va. Jan. 27, 2021) (invoking

---

[6] Notably, the fact that courts feel the need to point out that there is no per se rule against exercising jurisdiction in such an action suggests that the court in fact has considerable discretion to decline to exercise jurisdiction in such an action.

*Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 378 (4th Cir. 1994)). Likewise, the Court agrees with the Fourth Circuit that in a case like the instant one, the court should keep in mind "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts." *Nautilus* 15 F.3d 376 (citing *Mitcheson v. Harris*, 955 F.2d 235, 237-41 (4th Cir. 1992)).

On the other hand, the Sixth Circuit has directed courts to assess specific five factors to determine the propriety of a federal court's discretionary exercise of jurisdiction in a declaratory action. To reiterate, those factors are: (1) whether the declaratory judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*;" (4) whether the use of a declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Amsouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004) (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

<u>ANALYSIS</u>

The Court will address the five factors, as laid out by the Sixth Circuit, in turn below.

1. <u>Factor One: Settlement of the Controversy</u>

The Sixth Circuit has developed two lines of precedent regarding the first factor. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008). Under one line of cases, the instant kind of insurer's declaratory action would "settle the controversy" for purposes of this factor because it would "settle the insurance coverage controversy" even if it would "not help resolve the underlying

state court action." *Id*. (citing *West Am. Ins. Co. v. Prewitt*, 208 F. App'x. 393, 396 (6th Cir.2006); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir.2003) ("[W]hile the declaratory judgment would not end the dispute between [the insured] and [the plaintiff in the underlying action], it would settle the controversy regarding the scope of insurance coverage issued by [the plaintiff-insurer in the declaratory action] to [the insured], and whether [the plaintiff-insurer] had a duty to defend the insureds."); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir.1987) ("The grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnify its insured, thus clarifying the legal relations in issue."); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n. 1 (6th Cir. 1986)).

Under the other line of cases, the instant kind of insurer's declaratory action would not help "settle the controversy" for purposes of this factor, because "while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Flowers*, 513 F.3d at 555 (citing *Travelers*, 495 F.3d at 272 ("Granting the declaratory relief sought by Evanston and Travelers settles the scope of the insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to 'clarify the legal relationship' between the other parties."); *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) ("The instant action does not involve an independent dispute[,] because it arises from and affects a pending Illinois lawsuit. It would not clear up the legal issues in that case.")).

The Sixth Circuit recognized this apparent conflict in *Flowers*, stating: "The difference between these lines of cases appears to rest on the competing policy considerations of

consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible." *Flowers*, 513 F.3d at 555.

The Court agrees with the second line of cases and finds that resolving the instant action for declaratory relief would not "settle the controversy" for purposes of the first factor. In the State-Court Action, Minon brought a claim for negligence. (Doc. No. 1-1 at 3). Although granting West Bend's requested declaratory relief *as to the duty to defend* would settle whether West Bend must defend Wood Tree Service in the State-Court Action, it would still leave unresolved the question (controversy) of whether Defendants in the instant case are negligent and liable to Minon for the damages he asserts. The current pendency of that question means not only that the instant declaratory action would not settle the controversy between the litigants in the State-Court Action. *See, e.g., Travelers*, 495 F.3d at 272 ("The district court's decision could not settle the controversy in the underlying state court litigation; thus, the first factor favors the court not exercising jurisdiction."); *Allstate Indem. Co. v. Ballouz*, No. 19-10007, 2019 WL 1207185, at *3 (E.D. Mich. Mar. 14, 2019) ("A decision on the coverage question in this Court will not resolve the underlying dispute."). But the pendency of that question also means that the instant declaratory action would not necessarily *fully* settle the controversy (between obviously is between the litigants in the instant declaratory action) regarding West Bend's duty to indemnify—the existence and extent of which duty would remain dependent on the future outcome of the State-Court Action if this Court were to declare that West Bend had a duty to indemnify; such declaration could only be a *conditional* and *general* declaration, one that could not address the antecedents questions of whether there was actually any liability at all to indemnify  and, if so, to what extent.[7]

---

[7] As discussed below, and as the Tennessee Supreme Court has noted, such questions are fact-based ones that can be resolved only in the underlying litigation.

Moreover, the instant declaratory action cannot resolve (at least on its own) even the dispute between the parties about West Bend's duty to indemnify (as opposed to duty to defend). That is because, as discussed below, West Bend's ultimately duty (if any) to indemnify turns on issues—issues of fact—that remain to be determined in the State-Court Action. Thus, this factor favors declination of jurisdiction.

2. Factor Two: Clarification of the Legal Relations at Issue

The second factor involves a consideration of "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. Manifestly, analysis of the second factor closely resembles that of the first. Previously, there was a split "among the Circuit's jurisprudence 'concerning whether [for this factor to support exercise of jurisdiction] the district court decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action.'" (*See White Pine Insurance Company v. McIntosh* (citing *Flowers*, 513 F.3d at 557 (citations omitted)). This split, unsurprisingly, mirrored the split discussed above with respect to the first factor. More recently, however, the Sixth Circuit held that "[w]hile the parties may have other tortious or contractual relationships to clarify in state court" the court when evaluating this factor should ask whether the declaratory action can conclusively resolve the insurer's indemnity obligation—even if other related issues remain pending in state court. *Flowers*, 513 F.3d at 557. The idea seems to be very straightforward: if the declaratory action would resolve the insurer's obligations to the insured, then the second factor favors the court exercising jurisdiction, even if the first factor (which seems to be concerned with broader considerations than the second factor) goes the other way because the declaratory action would not settle the entire controversy at issue (including the underlying action).

West Bend seeks a declaratory judgment that it is not required to defend or indemnify Minon in the State-Court Action because Minon (allegedly) was an employee at the time of his injury and therefore was excluded from coverage under the Policy. A declaration could resolve, once and for all, the question of West Bend's duty to Defendants. And a declaration could "resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Scottsdale* 513 F.3d at 557. But, as suggested above and explained below, any such resolution would be only a general and conditional one—unable to resolve whether (and if so to what extent) there is an *actual*, as opposed to merely conditional, duty to indemnify until the state court has made factual determinations necessary to determine the nature and amount of any actual liability for which Defendants may need indemnification. So, the ability of this Court to clarify the legal relations between West Bend and Defendants as to indemnification is not plenary; by itself, without factual outcomes from the State-Court Action, the instant declaratory action cannot concretely and unconditionally clarify West Bend's duty to indemnify Defendants herein.

The Court finds this factor on balance to be neutral as to whether to exercise jurisdiction over the action.

3.  Factor Three: Race for *Res Judicata*

The third factor concerns "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for *res judicata*." *Id*. at 558. As the court in *AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004), explained:

> Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum. Allowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit. This also dovetails with the previous factor: where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive

suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum—a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act. *See Hyatt Int'l*, 302 F.3d at 712 (the Act "is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." (internal quotation marks omitted)); *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 523 (6th Cir.2000) ("[A] rule permitting [this sort of declaratory] action could frustrate a plaintiff's choice of forum and encourage forum shopping, races to the courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of judicial process to harass an opponent in litigation," irrespective of the actual motives of the declaratory plaintiff); *BASF Corp. v. Symington*, 50 F.3d 555, 558–59 (8th Cir.1995) ("declaratory actions founded exclusively on a defense to a state law claim should be dismissed as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to choose the forum and time of suit"; "the natural plaintiff's choice of forum and law will be disturbed only in exceptional circumstances"); *Tempco, 819 F.2d at 750* ("[T]he federal declaratory judgment is not a prize to the winner of the race to the courthouse." (internal quotation marks omitted)); *UAW v. Dana Corp.*, No. 3:99CV7603, 1999 WL 33237054, *5–*6 (N.D.Ohio Dec.6, 1999) (where declaratory plaintiff filed suit in order to "preempt the choice of forum that otherwise would be for the union to make," declaratory judgment inappropriate; noting "a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit," and that at the least, "the declaratory judgment plaintiff should have the burden or [sic] showing persuasive cause why its suit should not be enjoined").

*Id.* at 788.

There is no indication that West Bend has engaged in any strategic or devious filing tactics that would raise concerns for the Court. It was, after all, perfectly justified in invoking this Court's jurisdiction (and hoping that this Court would choose to exercise such jurisdiction); this is true even if the choice was motivated by self interest, which would only be natural and indeed expected. The Court does not perceive that a race for res judicata has occurred—as might be the case if, for example, it appeared that Defendants herein were preparing to file their own declaratory action in state court. There is no evidence in the record that [West Bend]'s action was motivated by procedural fencing—a term that in the Court's view does not fit a choice to lawfully file a suit in a court that has jurisdiction (and must or, as in this case, at least may exercise it)—and this Court

is "reluctant to impute an improper motive to [West Bend]." *Flowers* 513 F.3d at 558. Thus, this factor favors exercising jurisdiction.[8]

### 4. Factor Four: Increased Friction Between Federal and State Courts

The fourth factor concerns whether the federal court's exercise of jurisdiction would increase friction with state courts. "The Supreme Court has cautioned that 'where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference" if it permitted the federal declaratory action to proceed.'" *See Flowers* 513 F.3d at 559 (quoting *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495)). However, "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1067 (6th Cir. 1987), *abrogated on other grounds* by *Roumph*, 211 F.3d 964. Therefore, when analyzing the fourth factor, courts consider three sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action.

*Roumph*, 211 F.3d at 968. Regarding the first sub-factor, the facts found in and results of the State-Court Action—for example, what exactly happened, whether Wood Tree Service was negligent; whether Wood Tree Service's actions proximately caused Minon's injuries, the extent of Minon's

---

[8] That is not to say that West Bend's choice to file in federal court was not a tactical (or strategic) one or that this Court's exercising jurisdiction would be consistent with the notion, discussed herein, that it typically makes more sense for a state court to decide state-law issues like the ones presented in the instant declaratory action.

compensable injuries, and the extent to which Minon is properly considered an employee[9] at the time of his injuries—will determine whether there is anything to indemnify and (if so) also substantially affect the extent of West Bend's obligations to indemnify (though, admittedly, not West Bend's duty to *defend*).[10] In short, the extent of the insured's "obligation to indemnify is a question for the jury," i.e., a question of *fact*. *St. Paul Fire & Marine Ins. Co.*, 879 S.W.2d 831, 835 (Tenn. 1994). This is because "the duty to indemnify, i.e., ultimate liability, depends rather upon the true facts . . . . Thus it is not uncommon that an insurer will have a duty to defend based on the allegations in the complaint, yet have no subsequent duty to indemnify the insured. This situation will occur when trial on the merits of the underlying claim proves the facts to be otherwise

_____

[9] It appears that the determination of West Bend's obligations under Tennessee law, the determination of whether an individual is an employee or an independent contractor involves a multifactorial analysis. *See* Tenn. Code Ann. § 50-6-102(10)(D) (West). The primary test in Tennessee for determining whether an individual is an employee or an independent contractor is the "right to control" the conduct of the work. *Lindsey v. Smith and Johnson, Inc.*, 601 S.W.2d 923, 925 (1980). If the employer has the right to supervise or inspect the work to ensure it conforms to plans and specifications, but does not control the details of performance and methods used to achieve the result, the worker is typically considered an independent contractor. *Id*. Other factors that Tennessee courts consider include "the right of termination," "the method of payment," "the freedom to select and hire helpers," "the furnishing of tools and equipment," "self-scheduling of working hours," and "the freedom to offer services to other entities." *See* Tenn. Code Ann. § 50-6-102(10)(D) (West). However, this list is not exhaustive, and other factors beyond those defined by the statute may be considered in determining whether an individual is an independent contractor or an employee. *See generally Dickman v. Meadows Homes, Inc*., 1998 WL 63895 (Tenn. 1998).

Therefore, in Tennessee, the determination of whether someone is an employee or instead an independent contractor requires a detailed analysis of various factors which this court cannot consider based only on the facts set forth in the pleadings. Wood Tree Service begins this argument in their Response, claiming that there is no "factual analysis" regarding Minon's status as an employee, and highlighting that "material disputes of fact on the issue on whether Minon was an employee engulf the entirety of the pleadings in this case." (Doc. No. 25 at 4).

[10] Under *Tennessee* law, and as makes perfect sense, the insurer's duty to *defend* the underlying action does not turn on the true facts related to the underlying litigation, but rather is a question of law based on the potential liability the insured faces based on the nature (rather than the validity) of the allegations made against the insured in the underlying action: "The determinative issue of [the insurer's'] duty to defend the claim against [the insured] under the policy issued to him is, of course, a legal question. The issue is whether any loss suffered is within the risk contemplated by the terms of the insurance contract. This is a question of law . . . ." *St. Paul Fire & Marine Ins. Co.*, 879 S.W.2d at 833.

then [sic] as alleged, and judgment is entered on a ground dissimilar to the one contained in the complaint . . . ." *Id.* (quoting *American Policyholders' Ins. Co. v. Cumberland Cold Storage Co.,* 373 A.2d 247 (Me.1977)).

The Fourth Circuit illustrated this concept (and also correctly indicated that declaratory actions like the instant one present the risk of advisory opinions) in *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, (4th Cir. 2019). In that case, the insurer (Trustgard) sought a declaration that it was not required to cover a judgment in an underlying state court personal injury case brought by Sharon Collins against Trustgard's insured (Michael Brown) for injuries sustained by Collins while riding in a vehicle which rear-ended a car trailer being towed by a tow truck, even though neither Brown nor Brown's vehicles were involved in the automobile accident.

> Trustgard's alleged injury—that it might have to guarantee a future judgment against Brown—is of a hypothetical and contingent nature: the injury may or may not occur depending on the outcome of the state lawsuit. If Collins does not win a state-court judgment against Trustgard's insured [i.e., Brown], then a decision from this Court concerning Trustgard's obligation to guarantee such a judgment will have no effect. Thus, before any determination of liability, we risk issuing an advisory opinion.

*Id.* at 200. As for the observation about the risk of an advisory opinion,[11] *Trustgard* correctly noted that such did not apply to requests for a declaration that the insurer has no duty to *defend*. *Id.* ("Thus, suits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains undetermined."). But it does apply to request for a declaration that the insurer has no duty to *indemnify*. And in any case where there is a risk of an

---

[11] Article III of the Constitution limits federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2. Courts ensure that the case or controversy requirement is met by following several justiciability doctrines, including standing, ripeness, mootness, the political question doctrine, and the prohibition on advisory opinions. *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 137 (3d Cir. 2009). As the Supreme Court has long held, "the oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions." *Flast v. Cohen*, 392 U.S. 83, 96 (1968) (quoting C. Wright, *Federal Courts* 34 (1963)).

advisory opinion, the existence of such risk is a separate and substantial reason why the Court should consider declining jurisdiction in its discretion, even if the Court is not necessarily certain that it lacks jurisdiction under Article III on the grounds that the case actually requests an advisory opinion. Suffice it to say that in the instant case, by exercising jurisdiction over the instant case, the Court risks issuing an advisory opinion as to West Bend's duty to indemnify, and this independently counsels against exercising jurisdiction.[12]

As for sub-factor two, whether a state court is in a better position to evaluate the factual issues that go into the determination of the existence and extent of West Bend's duty to indemnify,[13] the state court handling the State-Court Action is in a better position, naturally, because it is the current forum for addressing those issues. And "[i]nsurance companies are regulated by the states and, as such, state courts are generally in a better position to resolve insurance-coverage disputes." *Nationwide*, 357 F. Supp. 3d at 616 (citing *Grange*, 565 F. Supp. 2d at 790). *See also Flowers* 513 F.3d at 560 ("We generally consider state courts to be in a better position to evaluate novel questions of state law.").

Finally, the third sub-factor (whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy or whether federal common or statutory law dictates a particular resolution of the declaratory judgment action) also weighs against exercising federal jurisdiction in this case. *See Roumph*, 211 F.3d at 968. West Bend is seeking determinations of Tennessee contract and insurance law. "Tennessee courts weigh [public] policy considerations heavily when interpreting insurance contracts." *State Auto. Mut. Ins. Co. v. Turner Funeral Home,*

---

[12] The risk of issuing an advisory opinion does not necessary fit perfectly under the fourth factor, but the Court is confident that it is appropriately taken into account somewhere among the various factors and found it best to discuss at this particular point in the analysis.

[13] As indicated above, there really are no factual issues that go into the determination of West Bend's duty to defend.

*Inc.,* No. 1:05-CV-61, 2006 WL 686872 (E.D. Tenn. Mar. 13, 2006) at * 5 (citing *State Farm Fire and Cas. Co. v. White*, 993 S.W.2d 40, 43 (Tenn. Ct. App. 1998)). As recognized in *Nationwide*, the issues of insurance contracts and coverage implicate important state policies. *Nationwide*, 357 F. Supp. 3d at 617. "The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Omaha Prop. & Cas. Ins. Co. v, Johnson*, 923 F. 2d 446, 448 (6th Cir. 1991). Wood Tree Service has asserted that there is an important issue of state law in this case involving one of the policy exclusions relied upon by West Bend; that is, whether Minon was considered an "employee" (as opposed to an "independent contractor" or "temporary worker") as defined in the Employer's Liability exclusion in West Bend's insurance policy. (Doc. No. 25 at 7-9). There is a close nexus between the underlying factual/legal issues and state law and/or public policy, and federal law does not dictate a resolution of this action. Thus, whether the exercise of this Court's jurisdiction would increase friction with the state courts weighs in favor of not proceeding with this action in federal court.

5.   Factor Five: Availability of an Alternative Remedy

The fifth factor is whether there is an alternative remedy that is better or more effective. Obviously, when the answer to that question is yes, this factor militates against the court exercising jurisdiction. The Sixth Circuit is split regarding whether, in order for the answer to be yes, the state court proceeding must (i) be better or more effective than a federal declaratory action, or (ii) merely provide an alternative remedy. *Grange*, 565 F. Supp. 2d at 790-91 (citing *Scottsdale*, 513 F.3d at 562 ("As with the first two factors, our precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction.")). More recently, however, the Sixth Circuit upheld a district court's

determination that this factor weighed against exercising jurisdiction because a state court declaratory judgment action "would provide [the insurance company] with the same remedy it seeks in federal court, [and] the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty Ins. Co. v. Cole's Place, Inc*., 936 F.3d 386, 401 (6th Cir. 2019).

Ultimately, the relevant inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562. "One of the alternative remedies available to the federal declaratory plaintiff is to seek a declaratory judgment in state court." *Flowers*, 513 F.3d at 562. Here, West Bend may file a declaratory judgment action in state court. *See Philadelphia Indem. Ins. Co. v. Priority Pest Prot., LLC*, 398 F. Supp. 3d 280, 286 (M.D. Tenn. 2019) (citing Tenn. Code Ann. §§ 29-14-101 – 113). There is no reason to believe that state remedies for resolution of the coverage issues are either unavailable or ineffective or that West Bend would be prejudiced by pursuing its rights in a declaratory action in state court. As previously mentioned, "state courts are best situated to decide insurance issues." *See Grange*, 565 F. Supp. 2d at 791. Further, although the Court recognizes that the instant action requests a ripe opinion regarding West Bend's duty to defend, it also seeks an opinion on West Bend's duty to indemnify, and "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir.1986). "Such actions ... should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling,  orderly presentation of fact issues and res judicata are created." *Id*. Similarly, by declining jurisdiction, this Court potentially could avoid duplication of witnesses and evidence in

parallel actions. "Additionally, any action in state court will apply the same substantive law that would be applied in the federal court diversity action." *Nationwide*, 357 F. Supp. 3d at 617-18.

Therefore, the Court finds that declining to exercise jurisdiction over this declaratory judgment action, "to allow the issues to be considered in state court," would be the "better and more effective remedy." *See Philadelphia Indem. Ins. Co.*, 398 F. Supp. 3d at 286. Relatedly, the Court concludes that alternatively continuing proceedings on the duty to defend while staying the unripe issue of duty to indemnify would "result in a bifurcation of this litigation that would be markedly inefficient." *Id.*[14]

Accordingly, this factor favors declining jurisdiction.

CONCLUSION

As noted above, under the Declaratory Judgment Act, the court has discretion *not* to hear a declaratory judgment action, even where jurisdiction exists. *Encore*, 281 F. Supp. 3d at 668. Indeed, the United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.' " *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995), *cited in Nationwide*, 357 F. Supp. 3d at 609. The test for whether to exercise that discretion is a muti-factor one, which necessarily calls on the Court to use its best subjective judgment and call it like it sees it without claiming to pronounce the objectively "correct" result.[15] The Court has done so here, confident that its conclusion is sound.

---

[14] The Court recognizes that it *may* decide the issue of the duty to defend, however the Court has chosen not to exercise jurisdiction on both the issues of the duty to defend and indemnify.

[15] As the undersigned previously has written, "multi-factor (or balancing) tests, though often having considerable desirability and merit, tend to foster outcomes that are unpredictable on the front end, given such tests' subjectivity." *Memphis A. Phillip Randolph Inst. v. Hargett*, 482 F.Supp.3d 673, 696, (M.D. Tenn. 2020) (Richardson, J.) (quoting Eli J. Richardson, *Eliminating the Limitations of Limitations Law*,

The Court finds, with the substantial discretion afforded the Court in this regard, that declining to exercise jurisdiction over this declaratory judgment action, to allow the issues to be considered in state court, would be the most effective remedy. And one final, broad point that the Court cannot ignore in considering whether to exercise jurisdiction: although this Court has subject-matter (diversity) jurisdiction in over this case at least insofar as it requests a declaration (regarding duty to defend) that is not an advisory opinion, there really is no reason at all for this case to be in this Court (other than the bare fact that it has jurisdiction) rather than the state court handling the State-Court Action.

Accordingly, the Court declines to exercise jurisdiction over this declaratory judgment action.

Following other districts that have done the same, this Court *sua sponte* dismisses this case without prejudice. *See, e.g., State Farm Fire & Cas. Co. v. Perry*, No. 20-CV-11128, 2021 WL 9183127, at *1 (E.D. Mich. Oct. 27, 2021) (declining to exercise jurisdiction and *sua sponte* dismissing the case with prejudice on a plaintiff's motion for default judgment); *Old Republic Ins. Co. v. C&G Express Trucking, LLC*, No. 5:20-CV-00082-M, 2020 WL 2772767, at *1 (E.D.N.C. May 28, 2020) (*sua sponte* declining to exercise jurisdiction, under the Declaratory Judgment Act, and dismissing a case on other grounds not raised in the defendant's motion to dismiss) (citing *Trustgard*, 942 F.3d at 202 as a basis to *sua sponte* dismiss a declaratory judgment action).

For the reasons stated herein, the Court DENIES West Bend's Motion (Doc. No. 22) and *sua sponte* DISMISSES the case without prejudice.

---

29 Ariz. St. L.J. 1015, 1050 (1997)). *See also Ingram v. Wayne Cnty., Michigan*, No. 22-1262, 2023 WL 5622914, at *16 (6th Cir. Aug. 31, 2023*) (Thapar, J., concurring) (stating that the balancing test of *Mathews* v. *Eldridge*, 424 U.S. 319 (1976), "suffers from problems common to many balancing tests [because among things it] requires [judges] to compare values that aren't comparable." *See also id.* ("With [multiple] subjective factors at play, will two judges ever balance them in the same way? I'm skeptical.").[15]

The Clerk is directed to enter judgment under Rule 58 and close the file.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE